**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| SOUTHEAST LIGHTHOUSE FOUNDATION,<br>122 Mohegan Trail<br>Block Island, RI 02807-0949,<br><br>Plaintiff,<br><br>v.<br><br>DEB HAALAND, in her official capacity as Secretary of the Interior, U.S. Department Of the Interior<br>1849 C St., N.W.<br>Washington, DC 20240; and<br><br>U.S. DEPARTMENT OF THE INTERIOR,<br>1849 C St., N.W.<br>Washington, DC 20240; and<br><br>BUREAU OF OCEAN ENERGY MANAGEMENT,<br>1849 C St., N.W.<br>Washington, DC 20240,<br><br>Defendants. | ) | **COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF**<br><br>Case No. 1:23-cv-03515 |

## INTRODUCTION

1. The Southeast Lighthouse Foundation, the steward of one of America's most treasured places, charged with protecting the Southeast Lighthouse, a National Historic Landmark, for generations of residents and visitors to enjoy, brings this appeal. The Southeast Lighthouse and the entirety of historic Block Island, Rhode Island, face the prospect of 599 highly visible offshore wind turbines that will industrialize 100% of Block Island's iconic Atlantic Ocean views for at least the next thirty years. Each turbine rises to nearly

three times the height of the Statue of Liberty. Proposed projects will inflict severe and long-lasting effects on the character, community, and heritage-tourism-driven economy of Block Island and the viability of the Southeast Lighthouse specifically. The U.S. Bureau of Ocean Energy Management (BOEM) is the federal agency responsible for ensuring balance between offshore development and harm to environmental and historic resources. Despite acknowledging the industrialized wind farms' adverse impacts, BOEM has succumbed to intense political pressure to conduct a sham consulting process with numerous skipped steps and foregone conclusions, shirking its responsibility to the public and allowing the corporate energy developers to set the terms for permitting. Given the speed with which BOEM is conducting offshore wind permitting, these failures, if left uncorrected, will set lasting and deeply harmful precedent by gutting the protections that Congress intended for environmental and cultural resources facing impacts from all forms of development.

2. This is an action for declaratory and injunctive relief appealing the failure of BOEM, an agency within the U.S. Department of the Interior, to comply with the National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4321 et seq., and National Historic Preservation Act (NHPA), 54 U.S.C. §§ 100101 et seq. in its permitting review of Revolution Wind Farm (Revolution), a proposed wind farm off the coast of Rhode Island.
3. Notwithstanding repeated calls from the Southeast Lighthouse Foundation and others for BOEM to correct errors in its application of NEPA and the NHPA, BOEM proceeded to authorize Revolution anyway based on a deeply flawed analysis that precluded ways to avoid, minimize, or mitigate the harm that Revolution is expected to cause.

4. For the reasons set forth below, BOEM failed to comply with NEPA and NHPA because it failed to take a hard look at environmental impacts and failed to resolve adverse effects to historic properties. Therefore, BOEM's Record of Decision was arbitrary, capricious, and not in accordance with law in violation of the Administrative Procedure Act (APA), 5 U.S.C. §§ 551, et seq. Accordingly, BOEM's decision should be vacated and remanded to BOEM for further consideration and for other relief that the Court deems appropriate as more fully set forth below.

## JURISDICTION AND VENUE

5. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), § 1346 (United States as a defendant); and 5 U.S.C. §§ 701-706 (Administrative Procedure Act or APA).
6. For all claims brought under the APA, Plaintiff challenges a final agency action and has exhausted all administrative remedies.
7. Venue is proper in this Court under 28 U.S.C. § 1391(e)(1)(A) where Defendants are agencies of the United States that reside in this judicial district.

## PARTIES

8. Plaintiff Southeast Lighthouse Foundation, Inc., is the non-profit owner of the Southeast Lighthouse, a National Historic Landmark[1] located within the Town of New Shoreham, Rhode Island, on Block Island. The Southeast Lighthouse is also listed in the National Register of Historic Places, the nation's official list of historic places worthy of

[1] National Historic Landmarks are historic properties that illustrate the heritage of the United States and represent an outstanding aspect of American history and culture. The National Park Service administers the National Historic Landmarks Program.

preservation.[2] Its mission, *inter alia*, is to "restore, preserve and protect the Southeast Lighthouse on Block Island" and to support its ongoing maintenance. The Southeast Lighthouse is the first and only National Historic Landmark in the United States to have experienced the effects of offshore wind development due to its proximity to the Block Island Wind Farm.

9. Defendant Deb Haaland is the Secretary of the U.S. Department of the Interior and is responsible for overseeing the nation's Outer Continental Shelf lands and oceans, including all lease areas selected for offshore wind energy development. Secretary Haaland oversees BOEM and is ultimately responsible for BOEM's decisions. Secretary Haaland is sued in her official capacity as Secretary of the Interior.

10. Defendant U. S. Department of the Interior is an agency of the federal government that plays a central role in how the United States stewards its public lands and waters, increases environmental protections, and pursues environmental justice. The Department of the Interior is authorized to grant a lease, easement, or right-of-way on the Outer Continental Shelf for activities that produce or support the production of energy from oil, gas, and other sources, including offshore wind energy production.

11. Defendant BOEM is a federal agency within the Department of the Interior that oversees the energy development of the Outer Continental Shelf, including oversight of offshore wind energy lease areas. At all relevant times, BOEM, as the lead federal agency, supervised the environmental review for the wind farms at issue in this appeal and issued the Record of Decision.

---

[2] Authorized by the National Historic Preservation Act of 1966, the National Park Service's National Register of Historic Places is part of a national program to coordinate and support public and private efforts to identify, evaluate, and protect America's historic resources.

12. At all times relevant to this Complaint, the Plaintiff participated as a Consulting Party for purposes of BOEM's NHPA and NEPA reviews.

## BACKGROUND

**Legal Framework**

13. Congress passed the National Environmental Policy Act (NEPA) to "promote efforts which will prevent or eliminate damage to the environment."[3]

14. NEPA requires federal agencies, such as BOEM, to take a "hard look" at the environmental consequences of major federal actions that significantly affect the natural and human environment, including historic and cultural resources, before issuing a decision that will allow the action to occur.

15. Prior to issuing a Record of Decision, the final step in NEPA review, agencies demonstrate compliance with NEPA through the preparation and issuance of a Final Environmental Impact Statement (EIS), which must analyze and disclose a proposed project's environmental consequences, including all direct, indirect, and cumulative effects.

16. If the EIS identifies a significant effect, the EIS must also propose and analyze "appropriate mitigation measures."[4]

17. Congress enacted the National Historic Preservation Act (NHPA) in recognition of development threats to the nation's irreplaceable historic properties—happening with increasing frequency—which include buildings, sites, objects, and their associated

---

[3] 42 U.S.C. § 4331.
[4] 40 C.F.R. § 1502.14.

landscapes because of their connection to our sense of orientation as a community and identity as an American people.[5]

18. Section 106 of the NHPA thus requires that federal agencies having authority to license any undertaking shall, prior to the issuance of any permit or license "take into account the effect of the undertaking on any historic district or property."[6] Furthermore, the agency "shall afford the Advisory Council on Historic Preservation . . . a reasonable opportunity to comment with regard to such undertaking."[7]

19. The goal of Section 106 consultation is "to identify historic properties potentially affected by the undertaking, assess its effects, and find ways to avoid, minimize or mitigate any adverse effects on historic properties."[8]

20. Section 110(f) of the NHPA applies a heightened level of Section 106 review and requires federal agencies to consult with the National Park Service on adverse effects to National Historic Landmarks and "use all possible planning to minimize harm" to those properties.

**Factual Background**

**Block Island's Historic and Cultural Resources**

21. Block Island, where the Southeast Lighthouse is located, represents the traditional, historic relationship that historic ocean-facing communities continue to maintain to their ocean settings.

---

[5] Section 1 of the NHPA, Pub. L. No. 89-665, amended by Pub. L. No. 96-515.
[6] 54 U.S.C. § 306180; 36 C.F.R. §800.1(c).
[7] *Id.*
[8] 36 C.F.R. § 800.1(a).

22. Block Island is unique in the nation due to its high concentration of historic and culturally significant resources.

23. Offshore wind farms' massive turbines—nearly three times the height of the Statue of Liberty or 80-story skyscrapers, along with their associated transmission stations—will create visual blight and disrupt Block Island's historic ocean views to and from hundreds of historic properties along the coastline, including some of the nation's most significant National Historic Landmarks such as the Southeast Lighthouse.

24. Because this region is critical to our nation's history and our citizens understanding of this history, Congress, federal agencies, state agencies, local governments, advocacy organizations, and private property owners have for more than a century taken myriad steps to conserve this region and protect its integrity by maintaining the landscape in a pristine condition for the American public to appreciate and enjoy.

25. These nationally important objectives have been promoted and served through designation of National Historic Landmarks, registration of properties in the National Register of Historic Places, and recognition of properties as cultural landscapes.

Block Island is commonly described as a place of landscapes of sandy beaches, oceanfront bluffs, historic harbors, historic lighthouses and inns, historic oceanfront houses, and "spectacular panoramas."[9]

27. Block Island is famous around the world for the Southeast Lighthouse National Historic Landmark, one of the most sophisticated lighthouses in the nation of the nineteenth century, which sits on the Mohegan Bluffs overlooking the Atlantic Ocean. Historic

---

[9] GERARD CLOSSET, BLOCK ISLAND REVEALED (2020). *See also* GERARD CLOSSET, BLOCK ISLAND: ONE OF THE LAST GREAT PLACES (2012).

descriptions of the Southeast Lighthouse refer to it as "one of the wonders of our coast."[10] It is the highest lighthouse in New England and has served as a primary coastal light within the U. S. Lighthouse Service and its successor organization, the U.S. Coast Guard. In the late nineteenth and early twentieth centuries many shipwreck victims were rescued at the site and found shelter within the lighthouse.

28. In 1991, The Nature Conservancy named Block Island one of "12 Last Great Places in the Western Hemisphere" because of its unique connection to conservation.[11] Writing for the *New York Times*, journalist Paul Schneider compares Block Island to Martha's Vineyard and Nantucket, proclaiming it "the crown jewel of the bunch."[12] And David G. Allen paints this picture, which generations of families and visitors have cherished and continue to prize: "There may be no better place to salute the summer on the Eastern Seaboard than at sunset happy hour on the front lawn of the majestic 130-year-old Atlantic Inn. Adirondack chairs and rockers fan out along a hill . . . as the sky turns hues of orange, purple and red."[13]

29. Block Island has already had its historic landscape adversely affected by the Block Island Wind Farm, a five-turbine test project located 3.8 miles from the Southeast Lighthouse National Historic Landmark and now owned by Ørsted. Revolution's adverse effects will be cumulative to those caused already by Block Island Wind, as well as those of Revolution Wind and Sunrise Wind, which Ørsted plans to develop.

**Revolution Wind Farm**

---

[10] MARIANA TALLMAN, PLEASANT PLACES IN RHODE ISLAND AND HOW TO REACH THEM (1893).
[11] *See Places We Protect: Block Island, Rhode Island*, THE NATURE CONSERVANCY, https://www.nature.org/en-us/get-involved/how-to-help/places-we-protect/block-island/.
[12] Paul Schneider, *36 Hours in Block Island, R.I.*, THE NEW YORK TIMES (July 8, 2005).
[13] David G. Allen, *On Tiny Block Island, Summer Lasts Longer*, THE NEW YORK TIMES (Sept. 10, 2009).

30. Revolution Wind Farm (Revolution) is a proposed utility-scale offshore wind farm project on the Outer Continental Shelf offshore Rhode Island with export cables connecting to the onshore electric grid in North Kingstown Rhode Island. It will be constructed within the OCS-A 0486 Lease Area. The 100-turbine wind farm will be constructed 15 miles southeast of Rhode Island's Block Island and Southeast Lighthouse. Revolution's wind turbines will be 873 feet tall.

31. Revolution is adjacent to two other projects proposed by the same developer and simultaneously under BOEM's review, South Fork Wind and Sunrise Wind, as well as other proposed wind farms. South Fork Wind will have up to 12 turbines at 840 feet tall and Sunrise Wind will have up to 122 turbines at 968 feet tall.

32. Revolution's visual effects, along with those of its related projects, South Fork Wind and Sunrise Wind, are expected to harm the integrity of historic properties by creating an industrialized viewshed that will despoil pristine views of the Atlantic Ocean.

33. The construction of wind farms is highly controversial because they threaten the many decades of consistent efforts by Congress, federal agencies, state agencies, local governments, advocacy groups, and private property owners to construct, protect, and maintain historic properties within the context of unspoiled landscapes.

34. Revolution and other reasonably foreseeable wind farms will disrupt historic connections and uninterrupted views of Block Island's historic properties to the ocean and harm their historic oceanfront context that has existed for centuries.

35. Revolution's developer, Ørsted, has conducted studies that show communities will suffer significant harm to their local economies, yet BOEM did not consider those studies.

**BOEM's Conduct**

36. Although BOEM is the lead federal agency for offshore wind farm permitting and has the chief responsibility for ensuring that Revolution complies with all federal environmental laws, BOEM continued its pattern of noncompliance established with South Fork Wind, again treating the environmental and historic review into a pretext for a predetermined outcome.

37. As part of its pattern of noncompliance, BOEM has failed to provide adequate notification to local governments and property owners with demonstrated interests in Revolution and other offshore wind projects, and then failed to consult with them or consider their views; failed to consult meaningfully with Tribal Nations, and ignored their concerns; failed to identify historic properties; failed to prepare adequate visual simulations so that the public will understand Revolution's and other wind farms' actual visual effects; failed to consider economic impacts to historic properties, including property values and lost tourism revenue, and failed to assess economic impacts to local economies, forcing local communities to "take it or leave it" and absorb Revolution's externalities, in violation of the letter and spirit of environmental permitting laws; failed to consider cumulative effects of all reasonably foreseeable wind farms, including those already under its review, which will magnify exponentially the adverse effects of Revolution; failed to comply with heightened levels of review required to protect National Historic Landmarks, such as the Southeast Lighthouse on Block Island, because it did not use all possible planning to minimize harm, but instead has chosen to rely on Revolution's consultants and ignore the concerns of consulting parties.

## CLAIMS FOR RELIEF

38. Plaintiff incorporates previous allegations as if set forth herein.

## FIRST CLAIM FOR RELIEF

## (BOEM'S Violation of NEPA and the APA)

39. Plaintiff incorporates previous allegations as if set forth herein.

40. NEPA requires federal agencies to fully consider and disclose the environmental consequences of any agency action before proceeding with that action. The Advisory Council on Historic Preservation's regulations require early coordination of NHPA review with NEPA.[14]

41. BOEM's authorization of Revolution was a federal action.

42. BOEM has violated NEPA and its implementing regulations by issuing a Record of Decision for Revolution, and by approving the Final EIS, despite the Final EIS's procedural and substantive defects.

43. BOEM failed to comply with NEPA by failing to consider all direct, indirect, and cumulative impacts of Revolution on the environment and historic properties.

44. BOEM's authorization has the likelihood to significantly affect the quality of the human environment by altering the nation's and the Plaintiff's landscapes, harming historic and cultural resources, and harming local economies, including those of Block Island, as well as the historic properties within those communities that depend on tourism revenue—such as the Southeast Lighthouse—to support their continued maintenance and future preservation.

45. BOEM failed to adequately consider or resolve the cumulative effects of Revolution because it failed to consider how other reasonably foreseeable offshore wind farms developed by Ørsted, including South Fork Wind and Sunrise Wind, among others,

---

[14] 36 C.F.R. § 800.8.

would adversely affect historic resources including the Southeast Lighthouse and its historic integrity.

46. BOEM's refusal to consider the effects of South Fork Wind and Sunrise Wind amounted to illegal segmentation of Revolution from other reasonably foreseeable and related offshore wind projects to avoid a comprehensive environmental review.

47. BOEM's authorization of Revolution without NEPA compliance was arbitrary, capricious, and contrary to law.

48. As a result of BOEM's actions and absent injunctive and declaratory relief, Plaintiff's interests in historic, cultural, and other resources have been and will continue to be harmed.

**SECOND CLAIM FOR RELIEF**

**(BOEM's Violation of Section 106 of the NHPA and APA)**

49. Plaintiff incorporates previous allegations as if set forth herein.

50. Section 106 requires federal agencies to complete the Section 106 review process "prior to the approval" of the federal undertaking.[15]

51. Revolution is a federal undertaking and therefore subject to Section 106 of the NHPA.

52. BOEM failed to conduct adequate visual simulations of Revolution and its direct, indirect, and cumulative effects.

53. BOEM inaccurately assessed and failed to resolve adverse effects, including cumulative effects, to all historic properties on Block Island, including the Southeast Lighthouse and elsewhere as Section 106 requires, many of which BOEM determined would not experience any adverse effects.

---

[15] 54 U.S.C. § 306180; 36 C.F.R. § 800.1(c).

54. In purported compliance with Section 106, BOEM executed a Memorandum of Agreement (MOA) that failed to resolve adverse effects to all historic properties within the Town of New Shoreham, adopting draft "Historic Property Treatment Plans" that purported to resolve adverse, which violates Section 106's requirement that adverse effects be avoided, minimized, or mitigated prior to approval of the undertaking.
55. BOEM also failed to invite and consult with all individuals or organizations that would assume a specific role or responsibility under the MOA and Historic Property Treatment Plans.
56. Authorizing the project without Section 106 compliance was arbitrary, capricious, and contrary to law.
57. As a result of BOEM's actions and absent injunctive and declaratory relief, Plaintiff's interests in historic, cultural, and other resources have been and will continue to be harmed.

**THIRD CLAIM FOR RELIEF**

**(BOEM'S Violation of Section 110(f) of the NHPA and APA)**

58. Plaintiff incorporates previous allegations as if set forth herein.
59. Section 110(f) requires that BOEM use *all possible planning* to minimize harm to National Historic Landmarks.
60. BOEM failed to comply with Section 110(f)'s heightened standard of review for National Historic Landmarks by not engaging in all possible planning to minimize harm because it never considered alternative lease areas that would not have created adverse visual effects, failed to conduct adequate visual simulations, failed to assess all adverse effects,

including cumulative effects, and failed to resolve adverse effects to all National Historic Landmarks, including the Southeast Lighthouse on Block Island, and others.

61. In purporting to comply with Section 110(f), BOEM failed to properly consult with the National Park Service over ways to minimize harm, relying instead on the mitigation measures it developed for NEPA and Section 106 purposes, even though NEPA and Section 106 has a lower standard of review than Section 110(f) requires.
62. Authorizing the project without Section 110(f) compliance was arbitrary, capricious, and contrary to law.
63. As a result of BOEM's actions and absent injunctive and declaratory relief, Plaintiff's interests in historic, cultural, and other resources have been and will continue to be harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court:

1. Declare that BOEM's approval of the Revolution Record of Decision, including the Final EIS, violates NEPA and NEPA's implementing regulations;
2. Declare that BOEM violated its duty to comply with Section 106 of the NHPA and its implementing regulations by failing to resolve adverse effects;
3. Declare that BOEM violated its duty to comply with Section 110(f) of the NHPA and its implementing regulations by failing to use all possible planning to minimize harm to the Southeast Lighthouse;
4. Order BOEM to set aside the Record of Decision that it issued for Revolution and prepare a new EIS;

5. Order BOEM to set aside the MOA issued to conclude the consultation required by Section 106 of the NHPA and re-start consultation;
6. Declare that BOEM violated Section 110(f) of the NHPA by failing to consult adequately with the National Park Service and not conducting all possible planning to minimize harm to National Historic Landmarks, including the Southeast Lighthouse and others;
7. Pending BOEM's completion of a revised EIS and Record of Decision and completion of a legally adequate Section 106 and Section 110(f) process, enjoin BOEM from allowing any construction activities to continue that may have already commenced;
8. Declare that BOEM's permitting review was a pretext for a predetermined outcome, and order supplemental discovery.
9. Grant Plaintiff such temporary restraining orders or preliminary or permanent injunctions as they may request;
10. Retain jurisdiction of this action to ensure compliance with its decree;
11. Award Plaintiff its fees, costs, expenses, and reasonable attorneys' fees as provided by 28 U.S.C. § 2412 and 54 U.S.C. § 307105, and expert witness fees;
12. Grant Plaintiff additional relief as the Court deems appropriate.

Respectfully submitted this 22nd day of November, 2023.

/s/ William J. Cook, Bar No. SC0009
CULTURAL HERITAGE PARTNERS, PLLC
2101 L Street NW; Ste. 300
Washington, DC 20037
Tel: 202.567.7594
Fax: 866.875.6492
Email: will@culturalheritagepartners.com

Jessica R. G. Krauss, Bar No. VA162
CULTURAL HERITAGE PARTNERS, PLLC
2101 L Street NW; Ste. 300
Washington, DC 20037
Tel: (202) 567-7594
Email: jessica@culturalheritagepartners.com

Gregory A. Werkheiser (pending admission *pro hac vice*)
CULTURAL HERITAGE PARTNERS, PLLC
East Grace Street; Ste. A
Richmond, VA 23223
(202) 567-7594
Email: greg@culturalheritagepartners.com

COUNSEL FOR PLAINTIFF